FILED
CLERK, U.S. DISTRICT COURT
06/06/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: DVE DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

ROBERT LOUIS CIRILLO,

Defendant.

No. 8:22-cr-00077-DOC

I N F O R M A T I O N

[15 U.S.C. §§ 78j(b), 78ff, 17 C.F.R. § 240.10b-5: Securities Fraud (Investment Fraud); 26 U.S.C. § 7206(1): Subscribing to a False Tax Return; 18 U.S.C. § 1349: Conspiracy to Commit Wire Fraud; 18 U.S.C. § 981(a)(1)(C), 26 U.S.C. § 7301, and 28 U.S.C. § 2461(c): Criminal Forfeiture]

The United States Attorney charges:

COUNT ONE

[15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5; 18 U.S.C. § 2(b)]

A. INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1. Napoli Partners, Inc. ("Napoli"), Davinci Equity Partners, Inc. ("Davinci"), and Genco Partners ("Genco") were nominee entities created, owned, and operated by defendant ROBERT LOUIS CIRILLO to market investments purportedly backed by short-term construction loans.

2. The investments in Napoli, Davinci, and Genco constituted securities within the meaning of the Securities Exchange Act of 1934.

3. Defendant CIRILLO was a resident of Chino Hills, California.

B. THE SCHEME TO DEFRAUD

4. Beginning in or around 2014 and continuing through in or around 2021, in Orange and San Bernardino Counties, within the Central District of California, and elsewhere, defendant CIRILLO, together with others known and unknown to the United States Attorney, knowingly and willfully, directly and indirectly, by the use of the means and instrumentalities of interstate commerce and the mails, in connection with the purchase and sale of securities, used and employed manipulative and deceptive devices and contrivances by: (1) employing a scheme to defraud; (2) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (3) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon purchasers and prospective purchasers of securities (the "victim-investors"), by causing materially false and fraudulent statements and material omissions to be made to the victim-investors about defendant CIRILLO's use of the victim-investors' investments.

5. The scheme to defraud operated, in substance, as follows:

a. Defendant CIRILLO would trick victims into making investments in Napoli, Davinci, and Genco by making false promises of huge returns on the investments, when in fact, defendant CIRILLO was using the victim-investors' funds for personal expenses or to make

small lulling payments to previous victim-investors.

b. Defendant CIRILLO would solicit investments from the victim-investors by falsely telling the victim-investors that he would be investing their funds in short-term construction loans that would pay large return rates that varied from approximately 15% to 30% for a 30 to 90-day period. However, those representations by defendant CIRILLO were false because defendant CIRILLO was not investing any of the investors' funds into any such construction loans or any other investment; instead, defendant CIRILLO was using most of the victim-investors' funds for his personal benefit, including personal expenditures such as casino expenses.

c. During meetings with potential and existing investors, defendant CIRILLO would make false statements about how much money he had in the bank from the purported investments and how well the purported investments were doing. To support those false representations and to induce victim-investors to invest, defendant CIRILLO would show fake documents to potential and existing victim-investors, including fabricated bank records in the name of Davinci and Napoli.

d. When victim-investors began to realize that defendant CIRILLO had defrauded them, defendant CIRILLO would threaten some victim-investors to attempt to keep them quiet, including saying that one victim could go "for the [expletive] hole in the [expletive] desert. Tell him to test me."

e. In total, as a result of his scheme to defraud, defendant CIRILLO fraudulently obtained more than $3,000,000 in investment funds from more than 100 victim-investors.

C. EXECUTION OF THE INVESTMENT FRAUD SCHEME

6. On or about June 8, 2017, in San Bernardino County, within the Central District of California, and elsewhere, for the purpose of executing the above-described scheme to defraud, and in furtherance of the manipulative and deceptive devices described above, defendant CIRILLO directly, indirectly, and willfully caused the use of a means and instrumentality of interstate commerce in connection with the purchase and sale of securities, namely, the sale of $25,000 in Napoli Partners securities to Investor 1.

COUNT TWO

[26 U.S.C. § 7206(1)]

7. On or about June 25, 2018, in San Bernardino County, within the Central District of California, and elsewhere, defendant ROBERT LOUIS CIRILLO willfully made and subscribed to a materially false U.S. Individual Income Tax Return, Form 1040, for defendant CIRILLO and his wife for tax year 2017, which was verified by a written declaration from defendant CIRILLO that it was made under the penalties of perjury, and which defendant CIRILLO filed with the Internal Revenue Service, knowing the tax return was not true and correct as to every material matter contained therein, in that the tax return reported Business income (line item 12) of $33,985, whereas, in fact, as defendant CIRILLO then knew and believed, the amount of Business income required to be reported on such return was substantially greater, that is, more than $1,900,000.

COUNT THREE

[18 U.S.C. § 1349]

A. THE OBJECT OF THE CONSPIRACY

8. Beginning in or around March 2021, and continuing through at least in or around April 2021, in San Bernardino County, within the Central District of California, and elsewhere, defendant ROBERT LOUIS CIRILLO, together with others known and unknown to the United States Attorney, knowingly conspired and agreed to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

B. MANNER AND MEANS OF THE CONSPIRACY

9. The object of the conspiracy was carried out, and to be carried out, in substance, as follows:

a. Defendant CIRILLO would open a bank account in the name of a nominee entity.

b. Defendant CIRILLO and unknown co-conspirators would target a senior citizen, victim D.Q., to trick him into believing that his grandson had been arrested by police and that victim D.Q. needed to pay his grandson’s bail.

c. When communicating with victim D.Q. as part of the fraudulent scheme, unknown co-conspirators would pretend to be other people, including posing as a sergeant with a police department, an attorney with a public defender’s office, and D.Q.’s grandson.

d. Defendant CIRILLO and unknown co-conspirators would cause victim D.Q. to send approximately $400,000 to the bank account that defendant CIRILLO had opened by using interstate wire communications.

e. After receiving those funds in the bank account that defendant CIRILLO had opened, defendant CIRILLO and unknown co-

conspirators would use those funds for their personal expenditures, including more than $65,000 transferred directly to defendant CIRILLO's TD Ameritrade account and debit card expenditures.

C. OVERT ACTS

10. In furtherance of the conspiracy and to accomplish the object of the conspiracy, defendant CIRILLO, and others known and unknown to the United States Attorney, committed and caused to be committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

Overt Act No. 1: On or about March 5, 2021, defendant CIRILLO opened a bank account in the name of a nominee ("the nominee account"), in order to receive funds from victim D.Q.

Overt Act No. 2: On or about March 5, 2021, unknown co-conspirators spoke with victim D.Q. and falsely told him that his grandson had been arrested by the police and that D.Q. needed to send money for his bail, after which victim D.Q. sent multiple wire transfers totaling approximately $400,000 to the nominee account.

Overt Act No. 3: On or about March 18, 2021, shortly after victim D.Q. transferred $88,000 to the nominee account, defendant CIRILLO transferred $2,500 from the nominee account to a TD Ameritrade account held in defendant CIRILLO's name.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offenses set forth in either of Counts One or Three of this Information.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[26 U.S.C. § 7301 and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 26, United States Code, 7301, and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in Count Two of this Information.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) Any property sold or removed by the defendant in fraud of the internal revenue laws, or with design to avoid payment of such tax, or which was removed, deposited, or concealed, with intent to defraud the United States of such tax or any part thereof;

(b) All property manufactured into property of a kind subject to tax for the purpose of selling such taxable property in fraud of the internal revenue laws, or with design to evade the payment of such tax;

(c) All property whatsoever, in the place or building, or any yard or enclosure, where the property described in subsection (a) or (b) is found, or which is intended to be used in the making of property described in subsection (a), with intent to defraud the United States of tax or any part thereof, on the property described in subsection (a);

(d) All property used as a container for, or which shall have contained, property described in subsection (a) or (b);

(e) Any property (including aircraft, vehicles, vessels, or draft animals) used to transport or for the deposit or concealment of

property described in subsection (a) or (b), or any property used to transport or for the deposit or concealment of property which is intended to be used in the making or packaging of property described in subsection (a); and

(f) To the extent that such property is not available for forfeiture, a sum of money equal to the total value of the property described in this paragraph.

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//

//

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

BENJAMIN R. BARRON
Assistant United States Attorney
Chief, Santa Ana Branch Office

BRADLEY E. MARRETT
Assistant United States Attorney
Deputy Chief, Santa Ana Branch Office

CHARLES E. PELL
Assistant United States Attorney
Santa Ana Branch Office